UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Index No.

BRIAN VILLANUEVA,

                          Plaintiff,

            -against-                      **COMPLAINT**

FFO GROUP, LLC, PHILIP FALCONE, *Individually*, and
LISA FALCONE, *Individually*,             **PLAINTIFF DEMANDS
                                                                              TRIAL BY JURY**

                          Defendants.

------------------------------------------------------------------------X

       Plaintiff BRIAN VILLANUEVA, by and through his attorneys, Nisar Law Group, P.C., hereby complains of Defendants, upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981 and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"), and seeks damages to redress the injuries he has suffered as a result of being **Discriminated against on the basis of his race (Asian) as well as his association with a black person.**

2. Plaintiff also complains pursuant to the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure and refusal to pay Plaintiff earned wages and for reimbursement of out-of-pocket business expenses.**

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which all defendants reside.

1

## PARTIES

6. At all times relevant, Plaintiff BRIAN VILLANUEVA ("Plaintiff") was and is a resident of the State of New York and Kings County.

7. At all times relevant, Defendant FFO GROUP, LLC ("FFO GROUP") was and is a domestic limited liability company duly existing pursuant to, and by virtue of, the laws of the State of New York.

8. At all times relevant, Defendant PHILIP FALCONE ("PHILIP FALCONE") was and is a co-owner of Defendant FFO GROUP.

9. At all times relevant, Defendant LISA FALCONE ("LISA FALCONE") was and is a co-owner of Defendant FFO GROUP.

10. Defendants FFO GROUP, PHILIP FALCONE, and LISA FALCONE shall be herein referred to collectively as "Defendants."

## MATERIAL FACTS

11. By way of background, Plaintiff is Asian (namely, Filipino) and based on his facial features, it is visually obvious that he is Asian.

12. In or around January 2019, Plaintiff became employed by Defendants as a chef. Upon information and belief, the "FFO" in "FFO Group" stands for "Falcone Family Office." Plaintiff's primary duties and responsibilities included shopping for food and cooking meals for Defendants PHILIP FALCONE and LISA FALCONE (and others), for which Plaintiff's compensation was $100,000 in annual salary. Plaintiff's employment also included reimbursement for any out-of-pocket business-related expenses. Plaintiff worked primarily in the home of Defendants PHILIP FALCONE and LISA FALCONE, which is located in Manhattan, and was at all times an at-will employee.

13. Throughout Plaintiff's employment, he was subjected to race-based harassment, ultimately resulting in the constructive discharge of his employment.

14. For example, in or around March 2019, while Defendants PHILIP FALCONE and LISA FALCONE were discussing an Asian employee who previously worked for them, Defendant PHILIP FALCONE asked somebody to do an impression of this former employee's voice. Defendant PHILIP FALCONE was aware that Plaintiff was present during this time. In an attempt to imitate an Asian accent, this person responded in a comical and mocking tone of someone "speaking" Chinese. Although Plaintiff was visibly offended by this conversation, Defendant PHILIP FALCONE nonetheless laughed and complimented this portrayal.

15. Thereafter, in or around the end of May 2019, Defendants PHILIP FALCONE and LISA FALCONE began spending time at their home in the Hamptons on Long Island, New York, and told Plaintiff that he would be transitioning to working primarily at that location. Defendants leased an apartment near their Hamptons home for Plaintiff to stay during the week.

16. In or around June 2019, in the known presence of Plaintiff, Defendant LISA FALCONE told a story involving an offensive meme on a social media platform about Asians eating dogs.

17. In or around mid-July 2019, Defendant LISA FALCONE asked Plaintiff if he knew of any other professional chefs that were available to assist with cooking dinner on July 13, 2019, as the Falcone Family was hosting a dinner party for approximately 13 people, with guests including musicians Alicia Cook (who goes by the stage name "Alicia Keys") and Kasseem Dean (who goes by the stage name "Swizz Beatz").

18. In response, Plaintiff told Defendant LISA FALCONE that his girlfriend was a professional chef and could be available to help. Ultimately, Defendants told Plaintiff that they would hire her to assist Plaintiff prepare the meal for the dinner party.

19. By way of background, Plaintiff's girlfriend is black.

20. That day (i.e., July 13, 2019), Plaintiff's girlfriend arrived at the Falcones' Hamptons home in order to assist in preparation for the dinner party. This was the first time Defendant LISA FALCONE had ever met Plaintiff's girlfriend, and further, it was the first occasion Defendant LISA FALCONE had to learn what she looked like (i.e., Defendant LISA FALCONE never previously had occasion to meet her in person or see a photograph of her). In other words, until Plaintiff's girlfriend had arrived at her home, Defendant LISA FALCONE would have never known Plaintiff's girlfriend was a black woman. Ultimately, the dinner party was a success.

21. The following morning (July 14, 2019), while Plaintiff was at the Falcones' Hamptons home working, Defendant LISA FALCONE approached Plaintiff while he was in the kitchen and stated to him in a surprised tone: "Your girlfriend speaks very well. She seems educated. I would describe her as a chocolate-covered marshmallow."

22. Plaintiff was offended by this racist remark. Defendant LISA FALCONE then proceeded to ask Plaintiff, "Do you use the word 'nigga' at home with your girlfriend?" Plaintiff was shocked that Defendant LISA FALCONE used the word "nigga" in describing his girlfriend. Defendant LISA FALCONE noticed the shocked and offended expression on Plaintiff's face, however, rather than apologize, she said defensively, "I'm Puerto Rican and grew up in Spanish Harlem so I can speak like that" (seemingly inferring that because she herself is a minority she is allowed to use racist language about others).

23. The following day—to wit, July 15, 2019—Plaintiff approached Defendant LISA FALCONE and asked her why she said that his girlfriend "speaks well and seems educated," to which Defendant LISA FALCONE responded, "I meant she speaks really eloquently. Alicia [Keys] doesn't speak that way. She didn't have an education and was just discovered by Clive Davis when she was fifteen years old. Swizz [Beatz] definitely doesn't speak that way either." Plaintiff understood this response to mean that (according to Defendant LISA FALCONE) black people talk a certain way whereas his girlfriend didn't, as she (the girlfriend) talked like a "smart" and "educated person" (suggesting that talking "smart" and like an "educated person" is inapposite to how black people speak).

24. That evening, the Falcones asked Plaintiff to deliver some pizzas to a beach near their home around dinnertime, which he did. However, upon delivery, and having been disgusted by the repeated racist remarks about Asian and black people, Plaintiff resigned his employment, believing that no reasonable person in his shoes should or could be expected to endure such a discriminatory and hostile work environment.

25. Significantly, Plaintiff approached Defendant LISA FALCONE and told her that he could no longer work for them and that her earlier comments were inappropriate and discriminatory in nature. Defendant LISA FALCONE nevertheless responded, again, that she was Puerto Rican, insinuating that she had a "free pass" to make such remarks. To this, Plaintiff replied, "I'm Filipino. What does it matter? There is no excuse for making such remarks." However, in response, Defendant LISA FALCONE stated insultingly, "You're not ethnic like black people and Puerto Rican people. You're *only* a minority" (implying there is some sort of hierarchy for minorities, for which she and black people are at the top and Filipinos (and/or Asians for that matter) are not).

26. Then, rather than accepting Plaintiff's resignation, Defendant LISA FALCONE asked Plaintiff not to resign and stated "talk to my black friends" (seemingly referring to Alicia Keys and Swizz Beatz—both of whom were at the beach with the Falcones at that time), and emphasized "they will tell you that I am not racist." Since Defendant LISA FALCONE was clearly in denial regarding her own words and actions, Plaintiff politely excused himself and left to collect his things from their house.

27. However, shortly after leaving, Swizz Beatz called Plaintiff on his cell phone to inquire as to what occurred and the reason Plaintiff resigned. When Plaintiff explained to him what Defendant LISA FALCONE had said about his black girlfriend, Swizz Beatz actually told Plaintiff that he supported his decision to resign and said it was commendable that he stood up for himself and his girlfriend.

28. The following day—July 16, 2019—Plaintiff sent a formal email to Defendants which read, in relevant part:

    Effective Monday July 15, I would like to resign and terminate my employment from FFO Group as personal chef. …

    Racially charged statements were made towards my girlfriend and I, the former temporarily hired as a chef to help cater a dinner event at the Falcone household, which created an uncomfortable work environment, my reason for resignation.

    Brian Villanueva

29. On July 17, 2019, Plaintiff and Defendant PHILIP FALCONE engaged in a text exchange, which was initiated by Defendant PHILIP FALCONE, which read (Defendant PHILIP FALCONE's texts on the left; Plaintiff's texts on the right):

> Wed, Jul 17, 10:12 AM
>
> So you are leaving us half way thru the summer after you signed a contract and we spent $15k per Month for an apt??
>
> Wed, Jul 17, 7:28 PM
>
> Apologies for the late response, but I'm just really upset and uncomfortable with the entire situation.
>
> I'm not sure if she told you but Mrs. said my girlfriend "seemed" educated and spoke well. Then she called her a chocolate covered marshmallow and then went on to ask if we used the word "nigga" at home.
>
> I'm really just trying to forget the whole thing ever happened and that any of that was said.

30. Defendant PHILIP FALCONE next inquired as to the circumstances of her saying this and, unbeknownst to Plaintiff, revealed that in the kitchen of their Hamptons home, the Falcones had an audio recording system installed. Plaintiff explained where and when it happened. Their exchange was as follows:

> I find that extremely hard to believe considering her two best friends are African American. At what point in the evening did she do it??

> She said that to me the next day while I was preparing breakfast.

> And you were in the kitchen? Around what time because I can check the mikes I have in the security system..

> Yes in the kitchen, it was Sunday around 8:00AM-9:30AM

> Ok. It will take me 24 -36 hrs

> Understood.

> That conversation took place right after Mrs. Keys stepped out of the house if that helps.

31.  Defendant PHILIP FALCONE did not respond to this last text message or ever tell Plaintiff what was revealed after reviewing the audio recordings from the morning of July 14, 2019.  (Also, it should also be noted that Defendant PHILIP FALCONE was either mistaken or dishonest in his text message above – Defendants and Plaintiff never entered into any contract).

32.  Nevertheless, despite the constructive discharge suffered by Plaintiff, he was still owed approximately $4,230.76 in unpaid salary for work performed from June 30, 2019 through July 15, 2019.  (In fact, on July 16, 2019, Plaintiff emailed with Defendant FFO GROUP's assistant controller (i.e., a woman named Adriana) who confirmed he was

owed the $4,230.76).

33. That said, on Monday, July 22, 2019, Plaintiff emailed Adriana again and inquired about obtaining this owed salary (as well as $145.53 in unpaid money Plaintiff had personally spent out-of-pocket for business expenses and which he had previously submitted receipts for reimbursement). Notably, throughout Plaintiff's employment with Defendants, he had routinely submitted business expenses for reimbursement.

34. In response, Adriana instructed Plaintiff to contact Defendant PHILIP FALCONE directly regarding the unpaid salary and reimbursement for expenses, which Plaintiff did.

35. Plaintiff and Defendant PHILIP FALCONE communicated that day (i.e., Monday, July 22, 2019), as well as on Tuesday, July 23, 2019, however, Defendant PHILIP FALCONE told Plaintiff that the only way Defendants would pay him anything (including salary owed for work performed in July) was if both he <u>and</u> his girlfriend sign general releases of claims, which included confidentiality provisions. In other words, Defendant PHILIP FALCONE refused to pay Plaintiff money Plaintiff had already earned unless both he and his girlfriend signed confidentiality agreements.

36. To this day, Defendants refuse to pay Plaintiff any money owed unless he and his girlfriend *both* sign general releases which include confidentiality provisions agreeing to keep confidential "any facts referring to any experiences [they] learned during [their] employment" including the creation of a hostile work environment experienced by Plaintiff and the racist remarks made by Defendant LISA FALCONE, or the existence of the agreements themselves. In other words, Defendant PHILIP FALCONE told Plaintiff the only way he would pay Plaintiff money he lawfully owed him was if both he and his girlfriend agree to sign agreements that they'd never talk about the comments made by

Defendant LISA FALCONE to anyone for the rest of their lives or the fact that they entered into such agreements.

37. Plaintiff has been unlawfully discriminated against and suffered a hostile work environment and constructive discharge.

38. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

39. As a result of Defendants' discriminatory treatment of Plaintiff, he has suffered emotional distress.

40. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

41. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

42. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

43. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

44. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right

in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

45. Plaintiff was discriminated against by Defendants on the basis of his race (Asian) as provided under 42 U.S.C. § 1981, causing him to suffer damages.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

46. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

47. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

48. Plaintiff was discriminated against by Defendants on the basis of his association with a black person as provided under 42 U.S.C. § 1981, causing him to suffer damages.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

50. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment" (emphasis added).

51. Defendants engaged in unlawful discriminatory practices in violation of the New York City Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of his race (Asian), causing him to suffer damages.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

53. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment" (emphasis added).

54. Defendants engaged in unlawful discriminatory practices in violation of the New York City Administrative Code § 8-107(1)(a) on the basis of his association with a black person, causing him to suffer damages.

### AS A FIFTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK LABOR LAW
### FAILURE TO PAY EARNED WAGES

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

56. Plaintiff earned "wages" within the meaning of NYLL § 190(1).

57. Defendants, in failing to pay Plaintiff for work performed, have violated the NYLL, including, inter alia, Article 6 and Section 191.

58. As a consequence, under NYLL § 198, Plaintiff is entitled to: (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

### AS A SIXTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK LABOR LAW
### FAILURE TO REIMBURSE EMPLOYEE EXPENSES

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

60. Plaintiff incurred certain out-of-pocket expenses for which he and Defendants expected and anticipated reimbursement.

61. Plaintiff is entitled to reimbursement of these expenses. See NYLL § 198-c.

62. Defendants, in failing to reimburse Plaintiff for these expenses have violated the NYLL.

63. As a consequence, under NYLL § 198, Plaintiff is entitled to: (a) the full amount of reimbursement, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the reimbursements found to be due.

## JURY DEMAND

64. Plaintiff requests a jury trial on all issued to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against all Defendants:

A. Declaring that all Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, the New York City Human Rights Law, and the New York Labor Law.;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices, including interest;

C. Awarding damages to Plaintiff resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental and emotional, distress, pain and suffering and injury to his reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff lost wages and reimbursement of expenses due to Defendants' willful violations of the New York Labor Law;

G. Awarding Plaintiff liquidated damages as a result of all Defendants' willful violations of the New York Labor Law;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
November 4, 2019

**NISAR LAW GROUP, P.C.**

By: _____
Casey Wolnowski
*Attorneys for Plaintiff*
570 Lexington Ave., 16th fl.
New York, NY 10022
Ph: (646) 449-7210
Fax: (877) 720-0514
Email: cwolnowski@nisarlaw.com